See also 663 F.Supp. 1554.

**LITTLE ROCK SCHOOL DISTRICT, Plaintiff,**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT, et al., Defendants,**

**Mrs. Lorene Joshua, as Next Friend of Minors Leslie Joshua, et al., Intervenors,**

**Katherine Knight, Individually and as President of The Little Rock Classroom Teachers Association (LRCTA), et al., Intervenors.**

No. LR-C-82-866.

United States District Court, E.D. Arkansas, W.D.

July 8, 1987.

P.A. Hollingsworth, Philip E. Kaplan, Janet L. Pulliam, John M. Bilheimer, Little Rock, Ark., for plaintiff.

Wright, Lindsey & Jennings, Little Rock, Ark., Neal, Gerber & Eisenberg, Chicago, Ill., C.R. McNair, III, Asst. Atty. Gen., Sharon Streett, Dept. of Educ., Jack, Lyon & Jones, Stephen L. Curry, Little Rock, Ark., for defendants.

Theodore Shaw, New York City, John W. Walker, Little Rock, Ark., for intervenors Joshua, et al.

Richard Roachell, Cearley, Mitchell & Roachell, Little Rock, Ark., for intervenors Knight, et al.

Robert D. Cabe, Cabe & Lester, Little Rock, Ark., for intervenors McKinney, et al.

## ORDER

HENRY WOODS, District Judge.

Pending is a motion by Pulaski County Special School District (PCSSD) seeking clarification of the Teacher Staffing Provision of the PCSSD Desegregation Plan.

## I.

### Background

In an earlier decision in this case PCSSD was found liable for a number of segregative acts, one of which was its failure to meet black staff hiring goals ordered in *Zinnamon v. Board of Education of Pulaski County Special District,* No. LR–68–C–154 (W.D.Ark.1973). That finding was affirmed by the Court of Appeals, 778 F.2d 404 (8th Cir.1985). Meanwhile, PCSSD had come into compliance with its present desegregation plan, with the percentage of black staff equaling its percentage of black students. However, with the boundary change ordered between the Little Rock School District (LRSD) and the PCSSD, PCSSD was required to cede fourteen schools to LRSD. Consequently PCSSD laid off 381 teachers in April, 1987. The decision as to which teachers to lay off was based strictly on seniority. PCSSD is now in position to recall some of the laid off teachers and seeks an order from this court permitting it affirmatively to recall black teachers who were laid off in disproportionate numbers due to the recency of their hiring. Due to recent changes in the law, this court cannot order the affirmative recall simply to allow PCSSD to meet the goal set out in its desegregation plan. However, because of the unique circumstances surrounding this layoff, the court will permit affirmative recall on a limited basis for the reasons set out below.

## II.

### Opposition to PCSSD's Motion

LRSD, the Joshua Intervenors and the Knight Intervenors have responded in opposition to the PCSSD motion.

The Joshua Intervenors urge the court to deny the motion to allow PCSSD to recall affirmatively but nonetheless would have the court hold PCSSD to its black staffing goal. The Joshuas further suggest that "possibly the only real solution is for this Court to somehow, however unequitable it may be, spit [sic] the black teachers between LRSD and PCSSD and still require both to meet their goals." The court is convinced it lacks the power to split black teachers between the school districts. The school districts must ultimately have the final say in which individual teachers they hire.

In that same vein, LRSD complains that if PCSSD is allowed to rehire affirmatively all its black teachers, LRSD will be forced to fill its vacancies from an all-white pool of laid off PCSSD teachers. LRSD seeks relief from sections VII(B) and (C) of this court's order of May 13, 1987. That order makes it clear that race and qualifications of teachers are the only relevant criteria for hiring staff. I have steadfastly maintained that this court lacks the power to direct the LRSD to hire specific teachers. LRSD was ordered to consider applications of laid off PCSSD teachers to insure that none was rejected because of being too educated or too experienced to fit the LRSD–LRCTA "model" discussed at length in the May 13 Order. Further, LRSD was ordered to assign those teachers who were hired from PCSSD to the annexed schools insofar as possible. This was ordered to provide some measure of stability to schools in a highly unstable situation. The LRSD is not limited to hiring laid off teachers from PCSSD. LRSD may, and I assume has, offered jobs to PCSSD teachers who were not laid off. The court sees no reason to alter its order of May 13.

The Knight Intervenors raise the objection that affirmative recall would violate the equal protection clause of the fourteenth amendment, as interpreted in *Wygant v. Jackson Board of Education,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). In *Wygant,* the district court upheld a collective bargaining agreement between the Board of Education and the teacher union which protected minorities from layoffs. There had been neither admission nor adjudication of racial discrimination by the school district, yet the district court held the contract allowing preferential treatment for racial minorities in layoffs to be justified on the basis of "societal discrimination." The *Wygant* Court held that there must be convincing evidence of prior discrimination to justify a governmen-

tal unit's use of racial classification to remedy the discrimination.

■ By contrast, a specific finding of racial discrimination in staffing by PCSSD was made by this court and affirmed by the Eighth Circuit Court of Appeals. *Little Rock School District v. Pulaski County Special School District*, 778 F.2d 404 (8th Cir.1985). That finding is the principal distinction between this case and *Wygant*. However, the analysis cannot end with a finding of prior discrimination by PCSSD. The *Wygant* court made it clear that in any event the remedy must be "narrowly tailored" to remedy the wrong. Because racial classification triggers "elevated," if not strict, scrutiny, the means chosen to accomplish the government's purpose must be specifically framed to accomplish the goal. *United States v. Paradise*, —— U.S. ——, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987). A number of factors must be considered in determining whether a remedy involving racial classification is narrowly tailored including: "[T]he necessity for the relief and the efficacy of alternative remedies, the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *Paradise*, 107 S.Ct. at 1067.

The PCSSD desegregation plan was submitted to this court prior to and without benefit of the Court's decision in *Wygant*. The PCSSD plan, as noted *supra*, correlates its percentage of black staff to its percentage of black students. The Court in *Wygant* makes it clear that such a correlation is faulty and cannot stand up to the elevated level of scrutiny which must be applied. The Court found "no apparent connection between the two groups" and held that, "[T]he proper comparison ... was 'between the racial composition of [the school's] teaching staff and the racial composition of the qualified public school teacher population in the relevant labor market.'" *Wygant*, 106 S.Ct. at 1848, *quoting Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

However, that holding is really beside the issue currently before this court. Regardless of how or why PCSSD hired its black staff members, the fact remains that they were in place before *Wygant* was decided in May of 1986. Certainly there is nothing in *Wygant* to suggest that PCSSD cannot hire more blacks than the percentage in the relevant labor market. It simply holds that race cannot be considered as a factor beyond a reflection of the relevant labor market. The relevant question at this juncture is not whether affirmative recall of blacks is permissible in light of the PCSSD's correlation of minority students to staff, but rather whether affirmative recall of blacks is sufficiently narrow to remedy the disparate impact that court-induced layoffs had on black teachers in PCSSD. In a promotion case, the relevant labor market consists of the current employees; in a recall situation, the relevant labor pool consists of those teachers who have been laid off and are awaiting recall. It is not the percentage of qualified blacks in the labor market seeking employment since, by contract with its teacher union PCSSD must recall laid off teachers before hiring new personnel. The proper analysis, then, is a comparison between the numbers of black teachers to white teachers before layoffs, and the numbers of black teachers to white teachers after the layoffs.

■ After applying the criteria set out in *Paradise*, *supra*, to the current situation, I am convinced that permitting PCSSD to recall affirmatively its black staff members to the extent they were disproportionately laid off is not only justified, but necessary to prevent yet another tragic irony in this case, that is, that the desegregation orders of this court and the Court of Appeals would directly cause blacks to shoulder a disproportionate burden in job layoffs. Nothing short of this one-time affirmative recall can remedy that effect.

The impact on third parties in this unique circumstance is much less burdensome than in a typical lay off situation. While PCSSD was forced to lay off teachers in numbers to equal the positions in the ceded schools, simultaneously an equal number of

**1560**

job openings were created in the adjacent LRSD. Theoretically, there should be the same number of jobs available in this geographic area. This court has previously entered an order providing for eventual reattainment of all seniority for laid off PCSSD teachers hired by the LRSD. This should further reduce the impact on laid off teachers.

Accordingly, the PCSSD may affirmatively recall black staff only to the extent necessary to prevent a disproportionate burden on black teachers as a result of court-induced layoffs.